AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>Tavalas Antuane Gaye Jr.<br><br><br><br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 8:25-mj-2897-CPT

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ August 5, 12, 25 & 29, 2025 _____ in the county of _____ Pinellas _____ in the _____ Middle _____ District of _____ Florida _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1)<br>21 U.S.C. § 841(a)(1) and 18<br>U.S.C. § 2 | Possession of a Firearm by a Convicted Felon<br>Distribution of Controlled Substances |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Brett McKean, ATF
*Printed name and title*

Sworn to before me over the telephone or other reliable electronic means and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d).

Date: _____ August 29, 2025 _____

_____
*Judge's signature*

City and state: _____ Tampa, FL _____

Christopher P. Tuite, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## CRIMINAL COMPLAINT

I, Brett McKean, being duly sworn, hereby state as follows:

### Introduction and Agent Background

1.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms &
Explosives ("ATF") assigned to the Tampa Field Division, Tampa Group 1, and
have been employed with ATF since February of 2019.  I have conducted
investigations concerning violations of Titles 18, 21 and 26. Based on my training
and experience as a Special Agent, I am familiar with violations of these federal laws
and how to conduct criminal investigations related to those offenses. During the
performance of my duties, I have utilized undercover (UC) law enforcement officers
and confidential informants (CIs).

2.      I was previously employed as a Police Officer and Detective with the St.
Petersburg Police Department (SPPD) in Florida for approximately seven years. I
have participated in firearms and narcotics related investigations at both previously
stated law enforcement agencies.  I successfully graduated from the Federal Law
Enforcement Training Center's Criminal Investigator Training Program (CITP) and
ATF Special Agent Basic Training.

3.      I am authorized to investigate violations of laws of the United States,
including violent crimes and narcotic offenses, and to execute warrants issued under
the authority of the United States.  I am currently assigned to the ATF Tampa
Division.  During my employment as an ATF Special Agent, I have participated in

numerous investigations which have resulted in the arrests of numerous individuals and the seizures of currency, financial ledgers, firearms, controlled substances, and indicia of controlled substance trafficking. During the course of these investigations, I have conducted or participated in physical and electronic surveillance, and I have conducted numerous debriefings of witnesses, informants, cooperating defendants, and other individuals cooperating with the United States. I have executed or assisted in executing numerous search warrants resulting in the seizure of firearms, narcotics, narcotics records, and financial documents.

4.      I submit only those facts believed to be relevant in the determination of probable cause, and this affidavit should not be construed as a complete statement of all the facts in this investigation.

5.      I submit this affidavit in support of a Criminal Complaint charging Tavalas Antuane Gaye Jr. (DOB: 12/16/1998) with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) and distribution of controlled substances, in violation of 21 U.S.C. § 841.

## PROBABLE CAUSE

6.      In August 2025, ATF agents met with a Saint Petersburg Police Department (SPPD) Strategic Operations Division detective regarding information that Tavalas Gaye Jr. ("Gaye"), a multi-convicted felon, was selling quantities of cocaine, cocaine base, methamphetamine, and marijuana. At the time of this meeting, through surveillance and other investigative means, law enforcement had identified the residence of 999 Dr. Martin Luther King Jr. Street South, Unit #1 St.

2

Petersburg, Florida 33705 (hereinafter, the "Target Location") as a location from which Gaye and his associates were selling narcotics. As described below, during the investigation, a SPPD undercover detective (the "UC") has purchased cocaine from Gaye and associates. All controlled purchases referenced in this affidavit were audio and video recorded.

7.      On or about August 5, 2025, an undercover detective ("UC") purchased approximately 4.7 grams of cocaine from Gaye. At the time of the transaction, Gaye was inside a vehicle parked outside of 259 Central Avenue in St. Petersburg, Florida.

8.      Prior to the transaction, the UC conducted multiple audio-recorded phone calls to Gaye at 727-226-2601 (hereinafter, "the Target Number"). During the conversations, Gaye and the UC agreed that Gaye would bring the UC approximately $270-worth of powder cocaine in downtown St. Petersburg. Later, Gaye called the UC from the Target Number, directed the UC to his location, and stated he was inside of a green Ford Bronco vehicle. Gaye directed the UC to the passenger side of the Bronco. Upon approaching the vehicle, the UC observed and identified Gaye sitting in the rear passenger side of the vehicle. The UC observed Gaye hand an item to the driver of the vehicle, who then handed the item to the front passenger of the vehicle. The front passenger then handed the UC a baggie containing a white chalky substance in exchange for $270. Lab analysis has confirmed that the substance provided to the UC was 4.23 grams of cocaine.

9.     On or about August 12, 2025, the UC conducted an audio and video recorded purchase of approximately 3.3 grams of cocaine from Gaye and an associate.

10.     Prior to the transaction, the UC conducted several phone calls with Gaye on the Target Number to arrange the deal. During the calls, Gaye agreed to sell the UC approximately $280-worth of cocaine and directed the UC to the Family Dollar store located at 1041 Dr. Martin Luther King Jr. Street South. Upon arriving at the Family Dollar, the UC called Gaye on the Target Number. During the conversation, Gaye told the UC to look for a female wearing a pink shirt. Shortly thereafter, a white female wearing a pink shirt approached the UC and provided the UC with a clear baggie containing white paper towel wrapped around a white chalky substance in exchange for $280. While the UC was with the female, Gaye called the UC back and told the UC to tell the female to go straight back to Gaye. The white substance sold to the UC was field tested utilizing a Scott Reagent System Modified G field test kit, which gave a positive result for the presence of cocaine. Analysis is currently being conducted by the Pinellas County Forensic Laboratory.

11.     Law enforcement conducted surveillance on the Target Location before, during, and after the transaction. Prior to the transaction, surveillance video shows Gaye exiting the Target Location and meeting with a white female wearing a pink shirt. After a brief encounter, the female departed the area and walked south toward the Family Dollar where the transaction with the UC took place. During the transaction, Gaye stayed outside the Target Location and waited for the female to

4

return. After the transaction, the white female is observed walking back to the Target Location and meeting up with Gaye. Video shows the female walk up to Gaye, who was seated in a vehicle, and extend her arm out to him as he extended his towards her. After this exchange, the female walked away, and Gaye walked back into the Target Location.

12. On or about August 25, 2025, the UC conducted an audio and video recorded purchase of approximately 4.9 grams of cocaine from Gaye and an associate.

13. Prior to the transaction, the UC conducted several phone calls with Gaye on the Target Number to arrange the deal. During the calls, Gaye agreed to sell the UC cocaine for approximately $260 and directed the UC to various locations before finally directing the UC to the Family Dollar located at 1041 Dr. Martin Luther King Jr. Street South.

14. Shortly thereafter, law enforcement observed Gaye arrive at, and enter, the Target Location. A short time later, officers observed Gaye exit the Target Location. Gaye met with a black male associate, who went into the Target Location with Gaye. A short time later, both the associate and Gaye exited the Target Location.

15. Shortly thereafter, the UC drove by the Target Location. While doing so, the UC called the Target Number and observed Gaye answer the phone. Gaye pointed in the direction of the UC vehicle as it drove by. Law enforcement observed Gaye directing the black male associate south, in the direction of the Family Dollar.

5

The associate walked south, where he met with the UC. The associate confirmed the agreed-upon price and provided the UC with a plastic bag that contained a white substance wrapped in a white paper towel, similar to the packaging from the August 12, 2025 deal. The suspected cocaine was field tested utilizing a Scott Reagent System Modified G field test kit, which gave a positive result for the presence of cocaine. Analysis is currently being conducted on the cocaine by the Pinellas County Forensic Laboratory.

16.    After the transaction, law enforcement observed the associate walk back to the Target Location and knock on the door. After receiving no response, the associate then walked toward a vehicle Gaye had entered in the common parking lot area just west of the Target Location. Due to an obstruction in the surveillance, it is undetermined whether the associate entered the vehicle. Gaye then departed the area in the vehicle.

17.    On August 27, 2025, I obtained a warrant to search the Target Location. *See* 8:25-mj-2874-TGW.

18.    On August 29, 2025, ATF and St. Petersburg Police Department (SPPD) executed a search at the Target Location. At the time of execution, Gaye was inside the Target Location with a black female. The Target Location has two bedrooms, one on the northeast side of the residence and one on the northwest side of the residence.

19.    During the search, law enforcement located multiple firearms and narcotics. More specifically, law enforcement found two rifles as well as one pistol in

6

the the northeast bedroom of the Target Location. The pistol located in the northeast bedroom of the Target Location was a Glock 30S .45 caliber pistol (SN: BLYU381). The Glock 30S had an extended magazine and was loaded with mutiple .45 caliber rounds of ammunition, including one round in the chamber. It was located on a night stand of the bedroom in reaching distance of the bed. See *figure 1* which depicts the Glock pistol.



*(Figure 1)*

7

20.    Agents also located a T6 Firearms multi-caliber rifle (SN: TT211041) leaning against the north wall of the northeast bedroom. The rifle was not loaded with a magazine. A records check on the rifle revealed it was stolen in Pinellas County, FL. There was also a Daniel Defense .223 caliber rifle (SN: TX-200535) located under the bed in the northeast bedroom. There was a magazine located inside of the rifle containing .223 caliber rounds. See *figure 2* which depicts the T6 rifle. See *figure 3* which depicts the Daniel Defense rifle.



*(Figure 2)*

8



*(Figure 3)*

21.     Agents located male clothing throughout the northeast bedroom as well as a green pair of sandals. Keys to a Dodge Challenger were located on the nightstand next to the bed in the northeast bedroom. Law enforcement observed Gaye driving a blue Dodge Challenger bearing FL tag 52DRGV on multiple days prior to the execution of the search warrant.

22.     A blue Dodge Challenger was parked on the street outside the Target Location. After observing what appeared to be marijuana on the driver side floorboard of the Challenger, law enforcement utilized the key fob from the northeast

9

bedroom nightstand and searched the vehicle. Law enforcement located approximately 18.9 grams of suspected crack cocaine in a plastic bag inside the center console.

23. During a post-*Miranda* interview with Gaye, Gaye indicated he slept in the northeast bedroom the night before the search warrant was executed. Gaye explained he had been staying in the Target Location from time to time, but it was not his residence. He explained he had keys to the Target Location. Surveillance conducted in the days prior to the search warrant execution revealed Gaye using keys to enter the Target Location several times over the course of multiple weeks. Gaye admitted to being a convicted felon and knew he was not allowed to possess firearms. Gaye denied any knowledge of firearms being inside the Target Location. Gaye also denied selling narcotics nor being in possession of narcotics. Gaye also denied driving the blue Dodge Challenger at any point. Gaye explained the female located inside the Target Location did not have knowledge of anything inside.

24. Agents spoke with the female who was located inside the residence during the warrant execution. She denied knowledge of any firearms and narcotics located inside the residence and advised she is friends with Gaye and stays in the Target Location from time to time. Law enforcement first encountered her as she was exiting the front door of the residence. She dropped a purse as she exited. Inside the purse, agents located an iPhone. Agents called the number associated with Gaye's cellphone and observed the iPhone ring.

25. Throughout a continued search of the residence, agents located five more pistols located inside of a northwest bedroom. Four of the pistols were located in a backpack in the closet. The other pistol was located in a cardboard box in the northeast corner of the northwest bedroom. The pistols located inside the backpack were an H&K VP9 SK 9mm (SN: 232-040450) loaded with multiple 9mm rounds of ammunition, a Canik TP9 9mm (SN: T6472-20VC55672) loaded with 15 rounds of 9mm ammunition, a Glock 27 .40 caliber (SN: TBB139), and a Sig Sauer P365 9mm (SN: 663733063). Also located inside the backpack were firearms accessories to include an optic, laser, empty pistol magazines, pistol holsters, and a pistol magazine containing .40 caliber rounds. Blue latex gloves were located in a Ziploc bag inside the same backpack. The firearm located in a cardboard box in the northeast corner of the bedroom was a Glock 23 .40 caliber (SN: BSRH788) with a magazine containing multiple .40 caliber rounds.

26. There was approximately one pound of marijuana located inside a large black bin inside the northwest bedroom. Agents located a cooking pot containing suspected cocaine residue in the kitchen as well as four containers of baking soda. Based upon my training and experience, baking soda is a binding agent used in the manufacturing of cocaine base. A digital scale was located in a closet in the main living room area.

27. ATF SA Christian Sepulveda examined the firearms found during the search. Based upon SA Sepulveda's examination and research of the above-described

11

weapons, as well as his knowledge, training, and experience, he believes the above-described weapons are firearms as defined in Title 18 U.S.C. § 921(a)(3).

28.    Further, SA Sepulveda has determined the Glock 30s .45 caliber pistol (SN: BLYU381) and the Daniel Defense .223 caliber rifle (SN: TX-200535) were not manufactured in the State of Florida. Therefore, the firearms would have had to travel in or affect interstate or foreign commerce prior to its recovery in the State of Florida.

29.    I have researched Gaye's criminal history. My research has uncovered that Gaye has felony convictions on his criminal record and is therefore prohibited from possessing firearms or ammunition under 18 U.S.C. § 922(g).  His felony convictions are included but not limited to:

- Vehicle Burglary (2018)
- Possession of Cocaine (2018)
- Auto Theft (2018)
- Leaving the Scene of a Crash Involving Injury (2022)
- Grand Theft Motor Vehicle (2022)
- Fleeing and Eluding (2022)

30.    I conducted a search of the Florida Office of Executive Clemency for Tavalas Gaye with the date of birth of December 16, 1998, the results of which indicated there was no record of civil rights being restored.

31.     Based on the aforementioned facts, I believe there is probable cause that on August 29, 2025, Tavalas Gaye was a convicted felon and possessed a firearm in violation of 18 U.S.C. § 922(g)(1), and that he distributed cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 on three dates between August 5, 2025, and August 25, 2025, all within the Middle District of Florida.

Respectfully submitted,

_____
Brett McKean
Special Agent, ATF

Affidavit submitted to me by reliable electronic means and attested to me as true and accurate by telephone or other reliable electronic means consistent with Fed. R. Crim. P. 4.1 and 4(d) before me this __29__ day of August, 2025.

_____
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

13