UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 8:25-cr-465-WFJ-NHA

TAVALAS ANTUANE GAYE, JR.

# UNITED STATES' SENTENCING MEMORANDUM

The United States files this sentencing memorandum requesting a 151-month sentence for the defendant, Tavalas Antuane Gaye.

## I. FACTUAL BACKGROUND

On August 5, 2025, Gaye agreed to sell cocaine to Detective Allen Talbot of the St. Petersburg Police Department, who was acting in an undercover capacity. Gaye and Talbot arranged the deal by phone, then met in downtown St. Petersburg to complete the deal.

Later, on August 12, 2025, Talbot reached out to Gaye by phone to arrange another drug deal. After some back and forth, Gaye directed Talbot to a business located at 1041 Martin Luther King Jr. Street South in St. Petersburg. After arriving at the location, Talbot called Gaye to let him know Talbot had arrived. Gaye told Talbot to look for someone in a pink shirt. Then, a short time later, a woman wearing a pink shirt approached Talbot and completed the arranged drug deal. Surveillance units observed that woman in pink meeting with Gaye outside 999 Martin Luther King Jr. Street South directly before and immediately after the deal

with Talbot.

On August 25, 2025, Talbot arranged another drug deal with Gaye. Gaye again directed talbot to the business at 1041 Martin Luther King Jr. Street South in St. Petersburg. This time, Gaye sent a black male in red pants to meet Talbot. Pole camera footage captured the black male in red pants meeting with Gaye outside 999 Martin Luther King Jr. Street South and then walking to meet Talbot. After completing the deal, the black male in red pants returned to meet with Gaye at 999 Martin Luther King Jr. Street South.

Four days later, agents executed a search warrant at 999 Martin Luther King Jr. Street South around 6 am. At the time of execution, Gaye and a black female were together in the residence. The apartment had two bedrooms, one on the northeast side of the residence (Room C) and one on the northwest side of the residence (Room D). Inside Room C, agents located a Glock 30S .45 caliber pistol on the nightstand, a T6 Firearms rifle leaning against the wall in the corner, and a Daniel Defense .223 caliber rifle with a magazine that contained 24 rounds of ammunition under the bed. Shoe boxes in the corner of Room C contained a loaded magazine, two boxes of .223 caliber ammunition, two digital scales, and two spoons with white residue. Inside room D, agents located a backpack with multiple items inside, including a Canik TP9 9mm pistol that contained 16 rounds of ammunition, an H&K VP9SK 9mm pistol with 20 rounds of ammunition, a .40 caliber Glock magazine capable of holding 22 rounds of ammunition, and a 9mm Glock Magazine capable of holding 31 rounds of ammunition. Agents also located a box in the corner

of Room D with a Glock 23 .40 caliber pistol with 22 rounds of ammunition. Room D also contained a money counter and a bin that contained approximately one pound of marijuana. A search of the kitchen revealed a pot with white residue and five boxes of baking soda.

Agents also searched a Dodge Challenger that Gaye was seen exiting the night before. The keys to the Challenger were found by agents on Gaye's nightstand. Inside the Challenger, agents found a baggie of cocaine base.

## II. PRESENTENCE INVESTIGATION REPORT

On October 9, 2026, the Probation Office issued its Presentence Investigation Report (PSR). Probation calculated Gaye's Total Offense Level as 29 and his Criminal History Category as VI. PSR ¶¶ 39, 55. Probation arrived at the Total Offense Level by applying Base Offense Level 20 under U.S.S.G. § 2K2.1(a)(4)(B) because Gaye was a prohibited person and his offense involved a semiautomatic firearm capable of accepting a large capacity magazine. *Id.*, ¶ 28. Probation then applied a four-level enhancement under USSG § 2K2.1(b)(1)(B) for possessing between 8 and 24 firearms, a two-level enhancement under § 2K2.1(b)(4)(A) for possessing a stolen firearm, and another four-level enhancement under § 2K2.1(b)(7)(B) for possessing a firearm in connection with another felony offense. *Id.*, ¶¶ 29, 30, 31. Probation additionally applied a two-level enhancement under § 3B1.1(c) based on the finding that Gaye was an organizer, leader, manager, or supervisor. *Id.*, ¶ 33. According to the PSR, the applicable Guideline range is 151

months to 188 months. *Id.*, ¶ 78. As explained below, the United States agrees with the Probation Office's guidelines calculations.

## II. LEGAL ARGUMENT

a. Probation correctly applied USSG § 2K2.1(a)(4)(B)

Gaye argues that the Glock 30S found on the nightstand of Room C (Gaye's bedroom) should not be used as the basis for the application of § 2K2.1(a)(4)(B). Doc. 55 at 3 – 4. The United States agrees, but Probation nevertheless appropriately applied 2K2.1(a)(4)(B) because Gaye possessed five other firearms capable of accepting a large capacity magazine.

Section 2K2.1(a)(4)(B) applies where the offense involved a semiautomatic firearm that is capable of accepting a large capacity magazine and the defendant was a prohibited person. The application notes to § 2K2.1 define a "semiautomatic firearm that is capable of accepting a large capacity magazine" as:

> "a semiautomatic firearm that has the ability to fire many rounds without reloading because at the time of the offense (A) the firearm had attached to it a magazine or similar device that could accept more than 15 rounds of ammunition; or (B) a magazine or similar device that could accept more than 15 rounds of ammunition was in close proximity to the firearm."

In this case, law enforcement found multiple firearms that fit this definition. First, in Gaye's bedroom (the northeast bedroom or Room C), law enforcement located a Daniel Defense rifle under the bed that contained 24 rounds of ammunition in a magazine with the capacity to hold 30 rounds of ammunition. *See* Exhibit 1. Second, law enforcement located a Canik TP9 9mm pistol that contained 16 rounds

of ammunition inside a backpack located in the apartment's second bedroom (Room D). *See* Exhibits 2, 2a, and 2b. Third, in that same backpack, law enforcement located an H&K VP9SK 9mm pistol with 20 rounds of ammunition. *See* Exhibits 3 and 3a. Fourth, in that same backpack, law enforcement located a .40 caliber Glock magazine capable of holding 22 rounds of ammunition and a 9mm Glock Magazine capable of holding 31 rounds of ammunition. *See* Exhibit 4. Finally, in a box located in the corner of Room D, law enforcement located a Glock 23 .40 caliber pistol with 22 rounds of ammunition. *See* Exhibits 5 and 5a.

Gaye concedes he possessed the Daniel Defense Rifle, *see* Doc. 55 at 4 -5 (acknowledging possession of the three firearms found in his bedroom), so there should be no dispute that section 2K2.1(a)(4)(B) applies. And while Gaye does dispute possession of the firearms recovered in Room D, the evidence favors holding Gaye responsible for all the firearms located in the apartment.

Detective Allen Talbot from the St. Petersburg Police Department, the lead investigator in this case, will testify that he utilized a pole camera to surveil 999 MLK Street South for the two weeks leading up to the execution of the search warrant on August 29, 2025. During that time, Gaye appeared to be in complete control over the apartment. Indeed, there was only one instance where Det. Talbot observed someone other than Gaye enter the apartment alone. That instance occurred on August 28, 2025, when a female entered the apartment alone. That same female was with Gaye at the time of the search warrant execution the following day. Further, other items located in Room D appear to be associated with evidence found

in Gaye's phone. For example, inside Room D, law enforcement found a bin that contained approximately one pound of marijuana. *See* Exhibits 6 and 6a. Consistent with that discovery, Det. Talbot located multiple photographs of bulk marijuana on Gaye's phone. *See* Exhibits 7a, 7b, 7c. Further, Room D also contained multiple unopened boxes of diapers. *See* Exhibit 8. Similarly, during a search of Gaye's phone, Detective Talbot located photos of a positive pregnancy test and a photo of an ultrasound. *See* Exhibits 9 and 10.

b. <u>Probation correctly applied USSG § 2K2.1(b)(1)(B)</u>

Section 2K2.1(b)(1)(B) calls for a four-level increase where the offense involved between eight and twenty-four firearms. Application Note 1 states that "'[f]irearm' has the meaning given that term in 18 U.S.C. § 921(a)(3)," which, as relevant here, includes "(A) any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; [or] (C) any firearm muffler or firearm silencer." When counting firearms for purposes of 2K2.1(b)(1), courts should only count those firearms that were unlawfully possessed or distributed. U.S.S.G § 2K2.1, Application Note 5. The Eleventh Circuit has held "a firearm may be counted under § 2K2.1(b)(1) if state law prohibited the defendant from possessing it, even if federal law did not." *United States v. Gill*, 864 F.3d 1279, 1280 (11th Cir. 2017) (per curiam). Florida Statutes § 790.23(1)(e) prohibits possession of a firearm by individuals with out-of-state felony convictions. The state definition of "firearm," like its federal counterpart extends to frames, receivers, and silencers. *See* Fla. Stat. § 790.001(9).

Here, section 2K2.1(b)(1)(B) applies because Gaye unlawfully possessed between eight and twenty-four firearms. As set forth in the PSR, when law enforcement searched Gaye's, they located eight firearms "firearms." PSR, ¶¶ 14-15 (three firearms in the northeast bedroom (Room C) and five firearms in the northwest bedroom (Room D). Gaye disputes possession of the firearms found in Room D, but, as explained above, his sole control of the apartment and the consistency between items found in Gaye's phone and in Room D lead to the conclusion that he knowingly possessed all the firearms found in the apartment.

c. <u>Probation correctly applied Section 2K2.1(b)(7)(B)</u>

The United States agrees with Probation's application of USSG § 2K2.1(b)(7)(B). This enhancement applies where a defendant "used or possessed a firearm or ammunition in connection with another felony offense." USSG § 2K2.1(b)(7)(B). The application notes state the enhancement applies "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense." USSG § 2K2.1(b)(7)(B) cmt. n. 13(A). Further, the application notes direct that the enhancement should apply when a firearm is found "in close proximity to drugs, drugs, drug-manufacturing materials, or drug paraphernalia . . . because the presence of the firearm has the potential of facilitating another felony offense." USSG § 2K2.1(b)(7)(B) cmt. n. 13(B). Courts interpreting the commentary notes have held that "close proximity encompasses both physical distance and accessibility." *United States v. Martinez*, 964 F.3d 1329, 1339 (11th Cir. 2020) (quoting *United States v. Gordillo*, 920 F. 3d 1292, 1300 (11th Cir. 2019)).

Here, Probation correctly applied § 2K2.1(b)(7)(B) because the firearms Gaye possessed were found in close proximity to drugs, drug-manufacturing materials, and drug paraphernalia. As noted above, during the search of Gaye's residence—a small two bed, one bath apartment—law enforcement located approximately one pound of marijuana in the same room (Room D) as a money counter and five pistols. Similarly, inside Room C, law enforcement found three firearms within feet of digital scales and forks with white residue. *See* Exhibit 11. Then, just outside those rooms in the kitchen, agents found a pot with white residue (Exhibit 12) and five boxes of baking soda (Exhibit 13). This proximity alone is sufficient to justify application of USSG § 2K2.1(b)(7)(B).

d. <u>Probation correctly applied Section 3B1.1(c)</u>

"Section 3B1.1(c) requires a sentencing court to enhance a defendant's offense level two levels if he was 'an organizer, leader, manager, or supervisor in any criminal activity.'" *United States v. Harness*, 180 F.3d 1232, 1235 (11th Cir. 1999). (quoting USSG 3B1.1(c)). To qualify, a defendant "must have been the organizer, leader, manager, or supervisor of one or more other participants." USSG 3B1.1 cmt. n. 2. Merely being a drug supplier does not make a defendant a supervisor under the guidelines, but the "assertion of control or influence over only one individual is enough to support" an enhancement under 3B1.1(c). *United States v. Jiminez*, 224 F.3d 1243, 1251 (11th Cir. 2000).

Here, Gaye exerted influence and control over at least two other participants, so the enhancement applies. First, on August 12, 2025, Gaye utilized a woman in

pink—a local drug user and prostitute known to Detective Talbot—to deliver the drugs to Detective Talbot. As the Court will see in videos played at sentencing, the woman in pink met with Gaye immediately before the transaction, then briefly met with Talbot to exchange the drugs and money and then returned straight to Gaye.

Similarly, on August 25, 2025, Gaye utilized another local drug user to complete a deal that Gaye had arranged with Det. Talbot. As with the prior deal, Gaye met with that user, who then walked to meet Det. Talbot to exchange the drugs and money. Then, that user returned back to Gaye. The defense disputes that Gaye directed the runner he utilized that day, but pole camera footage clearly shows pointing the man in the direction he needs to go to complete the deal.



Detective Talbot will also testify that utilizing drug-users as runners to complete a pre-arranged deal is a common tactic used by drug traffickers to insulate themselves from high-risk hand-to-hand transactions. Because these circumstances evidence control and influence over other participants, the enhancement applies.

## III. UNITED STATES' SENTENCING RECOMMENDATION

For reasons that will be discussed at sentencing, the United States requests a bottom of the guidelines sentence of 151 months in prison. Such a sentence is sufficient but not greater than necessary to achieve the purposes of 18 U.S.C. § 3553.

## IV. CONCLUSION

For the aforementioned reasons, the United States respectfully requests that the Court sentence Tavalas Gaye to 151 months in prison.

Respectfully submitted,

GREGORY W. KEHOE
Acting United States Attorney

By: */s/ David P. Sullivan*
Assistant United States Attorney
Florida Bar No. 0111166
400 North Tampa Street, Suite 3200
Tampa, Florida 33602
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: David.Sullivan3@usdoj.gov

**U.S. v. Gaye** **Case No. 8:25-cr-465-WFJ-NHA**

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record.

/s/ *David P. Sullivan*
Assistant United States Attorney
Florida Bar No. 0111166
400 North Tampa Street, Suite 3200
Tampa, Florida 33602
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: David.Sullivan3@usdoj.gov